UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD FOSTER,

           Plaintiff,

    v.

P. STATTI, et al.,

           Defendants.

No.  2:10-cv-0929 TLN AC P

ORDER &

FINDINGS & RECOMMENDATIONS

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants' motion to dismiss and motion for summary judgment (ECF No. 53) and plaintiff's cross-motion for summary judgment (ECF No. 62), both of which are fully briefed.  Also before the court are defendants' evidentiary objections and motion to strike re: plaintiff's cross-motion for summary judgment (ECF No. 69), and plaintiff's motion for a protective order (ECF No. 58).

## MOTION FOR A PROTECTIVE ORDER

Plaintiff seeks a "protective order" directing prison officials to provide copies of documents that plaintiff needs to support his opposition to defendants' dispositive motions. Specifically, he asks the court to order the prison to provide him copies of all CDCR[1] inmate

---
[1] California Department of Corrections and Rehabilitation.

1

1  appeals (known as 602 appeals) relating to this case; copies of specific sections of Title 15 of the

2  California Code of Regulations; and permission to exceed the institution's fifty-page limit on

3  copies.  In addition, he asks the court to order that he be permitted to exceed the page limitations

4  in his photocopying requests going forward.  ECF No. 58.  The court directed defendants to

5  respond to plaintiff's allegation that he has been denied necessary access to copying.  ECF No.

6  60.  Having considered defendants' response, the court concludes that no protective order need

7  issue.

8       Defendants note that plaintiff has filed an opposition of 171 pages, which contains copies

9  of inmate appeals and pages of the California Code of Regulations.  See ECF No. 64.  Defendants

10  have submitted a declaration from the supervising librarian at California State Prison-Sacramento.

11  The librarian explains that departmental regulations set limits on copying services related to

12  inmate litigation, including general page limitations and a restriction against duplicative copying

13  of documents that have already been filed in the same case or reproduction of authorities or

14  regulations that are readily available to judges and attorneys.  These regulations are eminently

15  reasonable.  The librarian declares that she made an exception to these rules for plaintiff, based on

16  his representation that he needed the documents to oppose defendants' summary judgment

17  motion, and made the copies he requested.  ECF No. 64-1 (Declaration of D. Hamad).

18       Defendants also point out that plaintiff's opposition includes unnecessary copies of nearly

19  eighty pages of documents previously submitted by defendants with their motion for summary

20  judgment.  ECF No. 64 at 3.

21       Because plaintiff obtained the copies he sought for purposes of opposing the present

22  dispositive motions, that portion of his request is moot.  To the extent plaintiff seeks a prospective

23  order, the motion is denied as overbroad and unwarranted.

24                    ALLEGATIONS OF THE COMPLAINT

25       This action proceeds on the second amended complaint filed on September 23, 2010 (ECF

26  No. 13), as modified by order of the court (ECF No. 14) dismissing all but  P. Statti, M. Wright,

27  D. Kraft and D. Davey as defendants.  As to these remaining defendants, plaintiff has been found

28  to have alleged a colorable Eighth Amendment claim arising from the alleged deprivation of

outdoor exercise for a ten-month period from June 2009 through a portion of April 2010.  The

extended loss of yard exercise arose from the cumulative impact of five disciplinary violations

related to plaintiff's persistent refusal to accept a cellmate and stand for institutional count.[2]

### MOTION TO DISMISS

Defendants move for dismissal on the ground that plaintiff failed to exhaust his

administrative remedies.  Defendants acknowledge that plaintiff administratively appealed the

individual disciplinary findings and related losses of yard time, but argue that he never grieved in

a single appeal the cumulative impact of the various assessed losses of yard time.  Motion for

Summary Judgment (MSJ), ECF No. 53-1 at 18.  Defendants rely on the following language in

the screening order issued by the magistrate judge previously assigned to the case:

> The court has ordered service on the defendants who may have
> been aware of the results of all the RVR's. *The court notes it is not
> entirely clear if plaintiff specifically filed inmate[] appeals that the
> cumulative result of the RVR's was the loss of so much exercise
> time and if he brought this to the attention of prison officials.  For
> purposes of the complaint the court will assume that plaintiff did
> raise this issue.*

Order (ECF No. 14) at 3, filed on 12/10/10 (emphasis added).

The court's comment regarding plaintiff's administrative appeals was not a ruling on

exhaustion, which was not before the court at the screening stage.  The court dismissed those

originally named defendants whose involvement was limited to a single disciplinary proceeding,

_____

[2] Plaintiff apparently believes he is also proceeding on due process claims under the Fourteenth
Amendment; however, this action proceeds only on his Eighth Amendment claim(s).  See ECF
No. 14 (screening order).  "Where a particular Amendment provides an explicit textual source of
constitutional protection against a particular sort of governmental behavior, that Amendment, not
the more generalized notion of substantive due process, must be the guide for analyzing these
claims."  Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotations omitted).  Nor is
plaintiff proceeding on any claim of a violation of procedural due process.  Moreover, to the
extent that plaintiff stated in his second amended complaint that he sought integrated housing and
alleged that the prison violated federal law by putative race-based housing, it is plain the
gravamen of his complaint is an Eighth Amendment claim; nowhere has a violation of his equal
protection rights been adequately framed.  Moreover, any such allegation would be undermined
by plaintiff's statement at his July 4, 2009 disciplinary hearing that "I refuse to accept any inmate
as a cellie."  MSJ, ECF No. 50-7 at 22.  In his deposition, plaintiff testified that he had not had a
cellmate in fifteen years but refused to provide the reasons for his refusal.  Plaintiff's Deposition,
13:15-25 - 14:1, 13-15; 15:12-17; 17:16 - 18:1-17.

1    because plaintiff had not alleged any factual basis for their knowledge of the cumulative

2    deprivation.  Because plaintiff's substantive Eighth Amendment claim is based on the cumulative

3    deprivation, individual liability turns on deliberate indifference to the cumulative deprivation.

4    That is an issue distinct from, and not coextensive with, application of the exhaustion

5    requirement.  The court now addresses the exhaustion issue for the first time.

6       I.      Standards Governing Exhaustion of Administrative Remedies

7        The Prison Litigation Reform Act (PLRA) mandates that "[n]o action shall be

8    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

9    prisoner confined in any jail, prison, or other correctional facility until such administrative

10   remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  Although "the

11   PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle,

12   534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute.  See

13   Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012).  As explicitly stated in the statute, "[t]he

14   PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'"

15   Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)); see also

16   Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot

17   be expected to use are not capable of accomplishing their purposes and so are not available.").

18       "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the

19   problem for which the prisoner seeks redress."  Sapp, 623 F.3d at 824.  Where a prison system's

20   grievance procedures do not specify the requisite level of detail for inmate appeals, which is the

21   case in California, id., a grievance satisfies the administrative exhaustion requirement if it "alerts

22   the prison to the nature of the wrong for which redress is sought."  Griffin v. Arpaio, 557 F.3d

23   1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology or legal theories

24   unless they are in some way needed to provide notice of the harm being grieved.  A grievance

25   also need not contain every fact necessary to prove each element of an eventual legal claim.  The

26   primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not

27   to lay groundwork for litigation."  Id.

28       Exhaustion under the PLRA is an affirmative defense.  Jones, 549 U.S. at 216.

1   Accordingly, "[t]he burden of establishing nonexhaustion . . . falls on defendants." Wyatt

2   v. Terhune, 315 F.3d 1108, 1112 (9th Cir. 2003); accord Brown, 422 F.3d at 936 ("[D]efendants

3   have the burden of raising and proving the absence of exhaustion.") (quoting Wyatt, 315 F.3d at

4   1119) (internal quotation marks omitted).  A defendant's burden of establishing an inmate's

5   failure to exhaust is low.  See Albino, 697 F.3d at 1031.  A defendant need only show the

6   existence of remedies that the plaintiff did not use.  Id.  Relevant evidence in so demonstrating

7   would include statutes, regulations, and other official directives that explain the scope of the

8   administrative review process.  Id. at 1032.  Once the defense meets its burden, the burden shifts

9   to the plaintiff to show that the administrative remedies were unavailable.  See Albino, 697 F.3d

10  at 1030-31.

11       In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court

12  may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.

13  If the court determines to do so, the procedure becomes "closely analogous to summary

14  judgment."  Id. at 1120, n.14.  No presumption of truthfulness attaches to a plaintiff's assertions

15  associated with the exhaustion requirement.  See Ritza v. Intl. Longshoremen's and

16  Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).  If the district court concludes that

17  the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

18  without prejudice.  Id.  Plaintiff was provided the requisite notice to oppose the motion under

19  Wyatt, supra, and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  ECF Nos. 17, 55.

20       Although CDCR's administrative exhaustion procedure has been modified since the

21  events at issue here, the prison appeal system in place at the time of plaintiff's segregation

22  included four levels.  In order to exhaust, an inmate must proceed through the following levels of

23  review:  1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3)

24  second level appeal to the institution head or designee, and 4) third level appeal to the Director of

25  the California Department of Corrections.  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal.

26  1997) (citing 15 Cal. Code Regs. § 3084.5).  A final decision from the Director's level of review

27  satisfies the exhaustion requirement.  Id. at 1237-38.

28

1      II.      Discussion

2              During the relevant period, plaintiff was separately assessed lost yard time in relation to

3      five different disciplinary violations.  A sixth disciplinary proceeding involved loss of day room

4      privileges while yard was already suspended.  No party disputes that plaintiff filed an inmate

5      appeal with respect to each of the sanctions at issue, and pursued each appeal through the

6      director's level.  Defendants do not contend that any available remedies remained unexhausted as

7      to any of the individual grievances.  In other words, defendants do not contend that plaintiff failed

8      to exhaust his remedies as to the discrete disciplinary rulings that resulted in a loss of yard time.

9      The court's review of the grievances confirms that plaintiff repeatedly alleged that the assessed

10     losses of yard time deprived him of outdoor exercise and violated his constitutional rights under

11     the Eighth Amendment.  See ECF Nos. 53-5 through ECF 53-10.  Defendants nonetheless argue

12     that the Eighth Amendment claim is unexhausted, because plaintiff failed to explicitly challenge

13     the increasing cumulative impact of lost outdoor exercise in each grievance and in interviews

14     with respect to each grievance.  MSJ, Declaration of D. Clark, an HDSP appeals coordinator,

15     ECF No. 53-15 at ¶ 3.

16             Defendants provide no authority for the proposition that the exhaustion doctrine required a

17     single comprehensive inmate appeal addressing all lost yard time.  Sapp v. Kimbrell, supra, on

18     which defendants rely, merely states the general rule that "[a] grievance suffices to exhaust a

19     claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."

20     Sapp, 623 F.3d at 824.  The Sapp court specified that "adequate notice" requires the prisoner to

21     "provide the level of detail required by the prison's regulations."  Id.  California regulations

22     require only that an inmate "describe the problem and the action requested."  Id. (quoting Cal.

23     Code Regs. tit. 15, § 3084.2(a)).  Plaintiff identified the problem as loss of yard time and sought

24     access to outdoor exercise.  This level of detail complies with the rule.  Defendants cite no

25     applicable prison regulation that would require a single comprehensive appeal challenging the

26     cumulative impact of serial deprivations of outdoor exercise.  Accordingly, defendants have not

27     met their burden of establishing non-exhaustion.

28             The court notes that the regulations governing inmate appeals require that inmates file

                                                        6

1    appeals within 15 days of a disputed disciplinary sanction, Cal. Code Regs. tit.15, § 3084.6(a),

2    and prohibit the filing of repeated appeals regarding the same matter, § 3084.3(c) (barring

3    duplicate appeals).  These regulations would appear to have barred plaintiff from renewing his

4    objections to previously grieved sanctions in subsequent appeals.  Defendants have not

5    demonstrated otherwise.

6         Plaintiff adequately put defendants on notice of the problem for which he seeks redress.

7    See Griffin, 557 F.3d at 1120.  The Griffin standard for exhaustion establishes a "low floor" for

8    specificity.  Id.  It is enough that the inmate alerts prison officials to the specific nature of his

9    problem and what remedy he seeks.  In Griffin, the inmate's lawsuit alleged an Eighth

10   Amendment violation arising from prison staff's disregard for a medically-required lower bunk

11   assignment.  The inmate's grievance was held insufficient to exhaust because it did not alert

12   prison authorities that the medical chrono was being disregarded, which was the gravamen of the

13   claim.  Id. at 1121.[3]  The grievance therefore did not "provide enough information . . . to allow

14   prison officials to take appropriate responsive measures."  Id. (quoting Johnson v. Testman, 380

15   F.3d 691, 697 (2d Cir. 2004)).  Similarly, in McCollum v. CDCR, 647 F.3d 870, 876-77 (9th Cir.

16   2011), the Ninth Circuit found that a claim of religious discrimination predicated on the

17   institution's failure to provide Wiccan chaplains was not exhausted by grievances addressing

18   other problems encountered by Wiccan inmates.  Id.  (affirming district court's finding that

19   inmates' challenge to paid-chaplaincy policy was unexhausted, because grievances did not

20   complain of lack of chaplaincy).

21        In this case, unlike Griffin and McCollum, plaintiff's administrative appeals clearly

22   notified prison authorities of the precise problem that forms the basis of his Eighth Amendment

23   claim: deprivation of outdoor exercise during particular time periods.  Moreover, although

24   exhaustion does not require the articulation of a legal theory, plaintiff here repeatedly asserted

25   that his Eighth Amendment rights were being violated by the loss of outdoor exercise.

26        Although the undersigned concludes that plaintiff's appeals were sufficient to exhaust his

27   _____

28   [3] The inmate's appeal requested a ladder without complaining about the improper assignment to
     an upper bunk.  Id.

claim even without a global complaint of cumulative yard deprivation, it should be noted that

plaintiff did put prison officials on notice that the various sanctions were adding up.  In appeal

Log No. HPSP-D-09-01667, plaintiff emphasized that the loss of 30 days of dayroom overlapped

with a prior disciplinary loss of 90 days of yard exercise, resulting in disciplinary detention in

violation of 15 Cal. Code of Civ. Proc. §§ 3330 and 3333[4]and amounting to cruel and unusual

punishment.  ECF No. 53-6 at 4-6.  In appeal Log No. HDSP 09-01811, dated September 17,

2009 and challenging a 90-day loss of yard, plaintiff complained that that he was being subjected

to "stacking" by repeated disciplinary charges and sanctions for the same offense (refusing race-

based assignments of cell-mates).  ECF No. 53-7 at 4, 6.  In seeking director's level review of this

appeal, plaintiff reiterated his stacking allegation and further specified "this is my fourth CDCR

115 for the same offense."  Id. at 5.  In appeal Log No. HDSP 09-02092, filed on October 25,

2009 and challenging the validity of a forty-five day loss of yard, plaintiff again complained of

"stacking."  ECF No. 53-8 at 3-5.  This record reflects that plaintiff did raise the point that he was

being repeatedly punished – and the punishment he complained of was the loss of yard.[5]  Even

without a statement of cumulative total yard loss, which arguably would have been beyond the

scope of the particular disciplinary actions appealed, these grievances did raise the issue of

consecutive sanctions.

　　　　For these reasons, "plaintiff's grievances were sufficient under the circumstances to put

the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion

---

[4]  These regulations, inter alia, limit intermittent confinement in disciplinary detention and/or
confinement to quarters to a period not to exceed ten days within a 35-day period.  15 Cal. Code
Regs. § 3330 (e) also states that continuous disciplinary detention "shall not exceed 10 full days
without approval of the director or deputy direction, institutions."  Section 3330(f) requires that in
cases of approval beyond 10 days, "the warden/superintendent shall note that fact in the
disposition section of the rule violation report stating the reasons for the extension and the
additional amount of time the inmate shall be confined, and shall sign and date the notation."
Section 3330(g) sets forth that a "request for the director's approval to retain an inmate in
disciplinary detention for longer than 30 days shall be accompanied by a current psychological
evaluation of the inmate's mental health. . .," which is to include "a personal interview with the
inmate."

[5]  The question whether any individual defendant was sufficiently aware of plaintiff's total period
of yard deprivation to incur liability for deliberate indifference is a separate question, discussed
below in relation to the motions for summary judgment.

1    requirement." <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).  The exhaustion

2    requirement demands no more.  <u>See</u> <u>Griffin</u>, 557 F.3d at 1120.

3                          CROSS-MOTIONS FOR SUMMARY JUDGMENT

4           Defendants seek summary judgment on grounds that the undisputed facts prove

5    defendants did not violate plaintiff's Eighth Amendment rights.  Specifically, defendants contend

6    that (1) plaintiff did not experience a deprivation that was sufficiently serious to violate the

7    Eighth Amendment, and (2) defendants, because they were unaware of the cumulative impact of

8    the multiple disciplinary violations, did not have the required culpable state of mind.  Motion for

9    Summary Judgment (MSJ), ECF No. 53 at 1.  Defendants also claim entitlement to qualified

10   immunity.  <u>Id.</u>  Plaintiff opposes defendants' motion and makes a cross-motion for summary

11   judgment on the basis that he was denied all access to outdoor exercise for a period of ten and a

12   half months in violation of his Eighth Amendment rights.  Opposition and Cross-Motion for

13   Summary Judgment (ECF No. 68).[6]

14      I.      Legal Standard for Rule 56 Motions

15          Summary judgment is appropriate when the moving party "shows that there is no genuine

16   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

17   Fed.R.Civ.P. 56(a).  Under summary judgment practice, the moving party "initially bears the

18   burden of proving the absence of a genuine issue of material fact."  <u>In re Oracle Corp. Securities</u>

19   <u>Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323,

20   (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the

21   record, including depositions, documents, electronically stored information, affidavits or

22   declarations, stipulations (including those made for purposes of the motion only), admission,

23   interrogatory answers, or other materials" or by showing that such materials "do not establish the

24   absence or presence of a genuine dispute, or that the adverse party cannot produce admissible

25   evidence to support the fact."  Fed.R.Civ.P. 56(c)(1)(A), (B).

26          When the non-moving party bears the burden of proof at trial, "the moving party need

27   _____

28   [6] Despite plaintiff's contention otherwise, this case proceeds solely on a claimed Eighth
     Amendment violation.  <u>See</u> <u>supra</u> n.2.

                                              9

1   only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

2   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B).

3   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

4   against a party who fails to make a showing sufficient to establish the existence of an element

5   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

6   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

7   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

8   circumstance, summary judgment should be granted, "so long as whatever is before the district

9   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

10          If the moving party meets its initial responsibility, the burden then shifts to the opposing

11   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

12   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

13   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

14   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

15   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

16   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the

17   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

18   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

19   Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is

20   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

21   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

22          In the endeavor to establish the existence of a factual dispute, the opposing party need not

23   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

24   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

26   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "

27   Matsushita, 475 U.S. at 587 (citations omitted).

28          "In evaluating the evidence to determine whether there is a genuine issue of fact," the

10

1    court draws "all reasonable inferences supported by the evidence in favor of the non-moving

2    party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir.2011).  It is

3    the opposing party's obligation to produce a factual predicate from which the inference may be

4    drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd,

5    810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party

6    "must do more than simply show that there is some metaphysical doubt as to the material facts....

7    Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

8    party, there is no 'genuine issue for trial.' "  Matsushita, 475 U.S. at 587 (citation omitted).

9    In applying these rules, district courts must "construe liberally motion papers and pleadings filed

10   by pro se inmates and ... avoid applying summary judgment rules strictly."  Thomas v. Ponder,

11   611 F.3d 1144, 1150 (9th Cir. 2010).  Plaintiff has been provided notice of the requirements for

12   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, as required by

13   Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), Klingele v. Eikenberry, 849 F.2d

14   409 (9th Cir.1988), and Woods v. Carey, 684 F.3d 934.  ECF Nos. 17, 56.

15       II.    Facts

16           For purposes of the instant summary judgment motions, the court finds that the following

17   facts are undisputed unless otherwise noted:

18           A.  The Parties

19           Plaintiff, a state prisoner, was housed at High Desert State Prison (HDSP) from late

20   November or early December, 2008 until June 21, 2010.[7]  (MSJ, Ex. A, Abstract of Judgment,

21   ECF No. 53-3 at 3; Ex. B, plaintiff's Deposition, ECF No. 53-4 at 10:5-25).

22           Defendant Wright was an associate warden at HDSP until December of 2009, and

23   responsible for disciplinary actions that arose in A-Yard and B-Yard.  (MSJ, Ex. I, Declaration of

24   M. Wright, ECF No. 53-11, ¶¶ 1-3.)

25           Defendant Kraft was an associate warden at HDSP who took over after defendant

26

27   [7] Although in their undisputed facts, defendants contend that plaintiff was located at HDSP until
     December 21, 2010, plaintiff in the portion of his deposition cited in support, plainly states he
28   transferred from HDSP six months earlier, on June 21, 2010.

1  Wright's retirement, becoming responsible for disciplinary actions in A and B yards beginning in

2  December of 2009.  (MSJ, Ex. J, Declaration of D. Kraft, ECF No. 53-12, ¶¶ 1-3).

3      Defendant Davey became, in December 2009, associate warden at HDSP in charge of C-

4  Yard and D Yard housing units.  As chief disciplinary officer, he was responsible for auditing

5  disciplinary actions.  (MSJ, Ex. K, Declaration of D. Davey, ECF No. 53-13, ¶¶ 1-2).

6      Defendant P. Statti was employed as an Appeals Coordinator at HDSP from about

7  October of 2008 until his November 2011 retirement from CDCR.  (MSJ, Ex. L, Declaration of P.

8  Statti, ¶ 1).

9      B.  The Deprivation Of Outdoor Exercise

10     From June 2009 through April 2010, plaintiff was charged six times with violations of

11  prison rules.  Each time, he was found guilty and assessed a loss of privileges:

12         o  On June 7, 2009, plaintiff was found guilty of refusing to accept
             a cell partner in Rules Violation Report ("RVR") No. FD-09-
13           05-15, and was assessed ninety days loss of yard privileges to
             run from June 7, 2009 through September 5, 2009.
14

15         o  On July 12, 2009, plaintiff was found guilty of refusing to stand
             for the institutional count in RVR No. FD-09-07-010, and was
16           assessed thirty days loss of day room privileges to run from July
             12, 2009, through August 11, 2009.

17         o  On July 31, 2009, plaintiff was found guilty of refusing to
             accept a cell partner in RVR No. FD-09-07-011, and was
18           assessed ninety days loss of yard to run from July 31, 2009,
             through November 28, 2009.
19

20         o  On September 23, 2009, plaintiff was found guilty of refusing
             to accept another cell partner in RVR No. FD-09-09-030, and
21           was assessed a forty-five day loss of yard privileges to run from
             September 23, 2009 through November 7, 2009.

22         o  On January 12, 2010, plaintiff was found guilty of refusing to
             stand for institutional count in RVR No. FD-09-12-046, and
23           was assessed ninety days loss of yard privileges to run from
             January 12, 2010 through April 13, 2010.
24

25         o  On March 24, 2010, plaintiff was found guilty of refusing to be
             handcuffed so he could be interviewed in RVR No. FD-10-03-
26           001, and assessed thirty days' loss of yard privileges to run
             from March 24, 2010 through April 23, 2010.

27  (SAC, ECF No. 13 at 3-7; MSJ, Exs. C-H, ECF Nos. 53-5 through 53-10; see also, plaintiff's

28  undisputed facts on cross-motion for summary judgment, ECF No. 62 at 81-84, UF Nos. 1, 3, 5,

7, 9, 11; defendants' response to plaintiff's undisputed facts, ECF No. 68 at 1-4).

Plaintiff declares that he was denied all outside exercise from June 7, 2009 to April 23, 2009, a total of ten and half months.  (Declaration of Ronald Foster, ECF No. 62 at 78; see also Second Amended Complaint (SAC), ECF No. 13, at 4-12; Opposition & Cross-Motion for Summary Judgment, ECF No. 62 at 68).  The documentation provided by the parties indicates that plaintiff was assessed losses of yard time that overlapped to span the period of June 7, 2009 through November 28, 2009[8] (over five and a half months), followed by a break of less than two months, and then followed by a further loss of yard time from January 12, 2010 through April 23, 2010 (over three months).  Defendants do not, however, affirmatively represent or -- more importantly on summary judgment -- produce any evidence that plaintiff was provided yard access between November 28, 2009 and January 12, 2010.

Plaintiff acknowledges that he committed each of the disciplinary offenses that caused the losses of yard and dayroom privileges, and that he could be disciplined for refusing a cellmate.  (MSJ, ECF No. 53-4, Ex. B, plaintiff's Deposition (and lodged deposition), 17:16-21; 18:18-20; 21:15-22; 25:14-20; 27:4-6; 34:13-24).

C. Plaintiff's Inmate Appeals

As noted above regarding exhaustion, plaintiff appealed each forfeiture of yard time:

> o In regard to RVR No. FD-09-05-15, plaintiff filed a prison grievance (HDSP D 09-01401) on July 8, 2009, complaining that the hearing officer violated prison regulations by imposing ninety days loss of yard as a punishment (and that officers continue to use race as a factor in his housing assignment when he is a participant in the department integration program).  On August 26, 2009, defendants Statti and Wright denied plaintiff's grievance at the second level.  On December 2, 2009, HDSP D 09-01401 was denied at the third level.   MSJ, ECF No. 53-5 at

---

[8] In a footnote, defendants question the accuracy of the November 28, 2009 date specified in Rules Violation Report Number FD-09-07-011.  They point out that there is a 120-day difference, rather than a ninety-day difference, between July 31, 2009 and November 28, 2009.  ECF No. 53-1 at 3 fn. 1.  Defendants produce no evidence, however, that the assessed yard loss ended on October 29, 2009 or prior to November 28, 2009.  Moreover, defendants themselves use November 28, 2009 as the cut-off point for the yard loss imposed as a result of RVR FD-09-07-011.  See, e.g., ECF No. 53-1 at 8 (defendants' chart summarizing yard loss).  Accordingly, for purposes of this motion the court assumes that plaintiff's yard privileges were lost through November 28, 2009.

13

2-6, 16-17; CMSJ, ECF No. 62 No. 2 at 82; ECF No. 68 at 2.

o   In regard to RVR No. FD-09-07-010, plaintiff filed a prison grievance (HDSP D 09-01667) on August 24, 2009.   He complained that the loss of dayroom privileges overlapped his previously received loss of yard privileges. On October 1, 2009, defendants Statti and Wright technically granted the grievance based on plaintiff's request to have it processed per a specific regulation, but denied it substantively and finding the loss of credit and privileges appropriate.  Plaintiff's appeal to the third level of HDSP D 09-01667 was denied on January 6, 2010. (MSJ, ECF No. 53-6 at 2-6, 13-14; ECF No. 62 No. 4 at 82; ECF No. 68 at 2).

o   In regard to RVR No. FD-09-07-011, plaintiff filed a prison grievance (HDSP-09-01811) on September 17, 2009.   He complained that prison officials were impermissibly using race as a basis for housing assignments and argued that the ninety days of yard loss was not supported by the regulations and violated his Eighth Amendment rights.  On October 22, 2009, defendants Statti and Wright denied the grievance.   The decision incorrectly stated that "there is no evidence that the SHO assessed ninety (90) days loss of yard as a result of the guilty finding of your RVR."  HDSP-09-1811 was denied at the third level on February 1, 2010. The inaccurate assertion at the second level there had been no 90-day loss of privileges was acknowledged but described as a "typographical error."  (ECF No. 53-7 at 2-4, 6-8; ECF No. 62 No. 6 at 83; ECF No. 68 at 2).

o   In regard to RVR No. FD-09-09-030, plaintiff filed a prison grievance (HDSP 09-02092) on October 25, 2009.   Among other things, he challenged the forty-five day loss of yard.  On December 11, 2009, defendants Statti and Kraft denied the grievance at the second level.   HDSP 09-02092 was denied at the third level on April 1, 2010.  (ECF No. 53-8 at 3-5, 8-9, 7; ECF No. 62 No. 8 at 83; ECF No. 68 at 3).

o   On February 11, 2010 defendant Davey, in his role as chief disciplinary officer, approved the disposition of CDCR FD-09-12-046.   On February 15, 2010, plaintiff filed an inmate grievance    (HDSP-D-10-00234)    regarding    this    RVR, challenging the 90-days of yard loss imposed.   On April 6, 2010, in a second level appeal response, defendants Kraft and Statti granted plaintiff's request for specific documentation but found the RVR to have been properly decided.  (ECF No. 53-9 at 2-5, 16; ECF No. 62 No. 10 at 84; ECF No. 68 at 3).

o   On April 5, 2010 defendant Davey approved the disposition of CDCR FD-10-03-001 and on April 18, 2010, plaintiff filed an inmate appeal (HDSP-D-10-00565) challenging the 30-day loss of yard.  On June 2, 2010, defendants Statti and Kraft "granted" the request for a specific directive that plaintiff sought, but affirmed the disciplinary decision and found the penalty appropriate.   (ECF No. 53-10 at 5, 8-9; ECF No. 62 No. 12;

14

1    ECF No. 68 at 4).[9]

2        D.  Other Facts Regarding Defendants Wright and Kraft

3        Among the duties of associate wardens is that of chief disciplinary officer, whose job it is

4    to audit disciplinary actions that arise in their area of the prison.  Auditing a disciplinary action

5    entails reviewing the Rules Violation Report to ensure that it was properly issued and processed

6    in accordance with current CDCR regulations for inmate discipline.  These regulations govern the

7    way in which disciplinary actions are issued and classified, the time constraints imposed in the

8    disciplinary process, and the due process requirements to be afforded through the hearing and

9    disposition of the offense.  During the time that defendants Wright and Kraft served as chief

10   disciplinary officers at HDSP, they audited approximately 150 Rules Violation Reports per month

11   from B-Yard, and another 40-70 per month from A-Yard.  (MSJ, ECF No. 53-11, Ex. I,

12   Declaration of M. Wright ¶¶ 2, 4; ECF No. 53-12, Ex. J, Declaration of D. Kraft  ¶¶ 3-4).

13       Associate wardens also often assist the warden's office by reviewing second level appeals

14   of inmates challenging disciplinary actions.  The response to these appeals is prepared by an

15   appeal coordinator, and the associate warden then reviews the response to ensure all

16   representations concerning the disciplinary record and the outcome of the appeal were correct,

17   and signs off on the response.  (ECF No. 53-11, Wright Dec. ¶ 5; ECF No. 53-12, Kraft Dec. ¶ 5).

18       Defendants Kraft and Wright maintain that when they conducted the administrative

19   review of plaintiff's various appeals, they were unaware of the existence of the others, and did not

20   know that plaintiff had sustained a series of Rules Violation Reports imposing consecutive loss of

21   yard privileges.  Defendants Kraft and Wright also declare that they did not have background

22   knowledge of plaintiff because he was not housed on the yards for which they were primarily

23   responsible, and that they had no reason to believe that the loss of yard privileges imposed in the

24   disciplinary reports would have a detrimental effect on plaintiff's mental health.  (ECF No. 53-11,

25   Wright Dec. ¶¶ 7-8, 10-11; ECF No. 53-12, Kraft Dec. ¶ 7-10).

26

27       [9] Defendants do not provide the third level decisions for either HDSP-D-10-00234 or
     HDSP-D-10-00565, but do not contend that either was unexhausted.

28

1       According to defendants Kraft and Wright, the disciplinary reports indicated that

2    plaintiff's mental health status had been evaluated by the hearing officer and did not indicate the

3    need for formal mental health review.  (ECF No. 53-11, Wright Dec. ¶ 11; ECF No. 53-12, Kraft

4    Dec. ¶ 10).  Defendants declare that if they had been aware of any adverse mental health

5    consequences to plaintiff from the lack of outdoor yard time, they would have referred him for a

6    mental health evaluation or to a classification committee for a possible modification of his

7    institutional program.  (ECF No. 53-11, Wright Dec. ¶ 12; ECF No. 53-12, Kraft Dec. ¶ 11).

8       Defendant Wright acknowledges that in reviewing Appeal Log Number HDSP 09-01811,

9    he/she misunderstood the outcome of the RVR hearing and failed to realize that plaintiff had been

10    assessed loss of outdoor yard privileges -- even though the RVR disposition was attached to the

11    appeal.  (ECF No. 53-11, Wright Dec. ¶ 9).

12       E.  Other Facts Regarding Defendant Davey

13       In his capacity as chief disciplinary officer over C-Yard and D-Yard, defendant Davey

14    audited approximately 120 disciplinary reports per month.  Due to this large volume, defendant

15    Davey avers he would not have had sufficient familiarity with any individual inmate to recall his

16    past disciplinary sentences or case history when auditing a Rules Violation Report.  Defendant

17    Davey declares that when he audited Log Number HDSP FD-09-12-046, and HDSP FD-10-03-

18    001, resulting respectively in losses of 90 days and 30 days of yard privileges, he was unaware

19    that plaintiff had received consecutive loss of yard privileges in four additional disciplinary

20    actions before the actions he reviewed.  (MSJ, ECF No. 53-13, Ex. K, Declaration of D. Davey,

21    ¶¶ 2-5).

22       Defendant Davey avers that he did not believe that the loss of yard privileges imposed in

23    the disciplinary reports would have a detrimental impact on plaintiff or affect his mental health

24    adversely.  Had he been aware of any adverse mental health consequences to plaintiff from the

25    lack of outdoor yard time, he would have referred plaintiff to a classification committee for

26    appropriate review of his institutional program and mental health status.  (ECF No. 53-13, Davey

27    Dec., ¶¶ 6-7).

28    *////*

F.   Other Facts Regarding Defendant Statti

As an appeals coordinator, defendant Statti received approximately 20-40 new appeals daily, to be read, addressed, screened, or distributed to the correct division or individual for processing in addition to other administrative duties.  Defendant Statti was personally responsible for investigating and preparing responses to Second Level appeals, which usually required a full investigation, interview of the inmate who submitted the grievance and any other witnesses, researching the issues involved, and preparation of a written response.  Defendant Statti avers that he generally completed approximately twenty Second Level reviews per month.  (MSJ, ECF No. 53-14, Ex. L, Declaration of P. Statti, ¶ 2).

Although defendant Statti recalls that plaintiff filed a number of appeals about a variety of issues, he did not specifically recall the appeals alleged in this lawsuit because of the large number of inmates he interviewed and issues he addressed; rather, he has only a very vague recollection of plaintiff.  Notwithstanding, defendant Statti does recall that plaintiff would never speak very much when defendant Statti tried to interview him about any of the appeals he filed, and would instead state that what he wrote in the form explained his position.  (Id. at ¶¶ 3-4).

According to defendant Statti, plaintiff never complained to him about the combined effect of loss of yard, or dayroom privileges, or refer to or related any one appeal to any other of his appeals.  Because of the number of appeals defendant Statti processed, he did not make the connection between plaintiff's appeals and was therefore unaware of the repeated violations of prison rules plaintiff sustained causing him to lose yard time on a continuous basis.  (Id. at ¶¶ 5-7).

Defendant Statti declares that in his capacity as an appeals coordinator, he had no ability to make decisions regarding inmates' program and yard status but rather, when reviewing an appeal of a disciplinary action, his responsibility was to ensure that all regulations were followed and time constraints met.  He relied on the staff working on the yards with the inmates to ensure that inmates were receiving appropriate programming opportunities.  Defendant Statti avers he did not believe plaintiff was experiencing a psychological deterioration from any of the actions in the appeals he reviewed.  If he had been aware of any negative psychological consequences, he

1   would have referred plaintiff to a classification committee for a possible mental health evaluation

2   and program review.  (Id. at ¶¶ 8-11.)

3           G.   Facts Regarding Injury To Plaintiff

4           Plaintiff did not suffer any physical injury as a direct result of the deprivation of outdoor

5   exercise that is the subject of this lawsuit, although he attributes his high blood pressure and

6   heartburn to the enforced lack of exercise.  He has testified that he "actually suffered a mental

7   breakdown" as a result of the extended period of deprivation of outdoor exercise.  (Plaintiff's

8   Dep. 46:1-8).  Plaintiff also testified that he made a suicide attempt and was placed at the EOP

9   level of care after the period at issue, sometime in June or July of 2010, which an unnamed doctor

10  at CSP-Sacramento attributed to the prior deprivation of yard exercise at HDSP.  (Plaintiff's

11  Lodged Dep. 47:4-49-4).

12          Throughout the period at issue, plaintiff was a participant in the mental health services

13  delivery system at the CCCMS[10] (or lowest) level of care.  (Plaintiff's Lodged Dep. 46:13-; 49:6-

14  13-18; ECF No. 53-5 at 11; ECF No. 53-6 at 11; ECF No. 53-7 at 16[11]; ECF No. 53-8 at 13; ECF

15  No. 53-9 at 12; ECF 53-10 at 11).  Plaintiff returned to the CCCMS level of care as of late

16  November 2011 and feels "okay" at that level.  (Plaintiff's Lodged Dep. 50:11-22.)

17     III.    Defendants' Evidentiary Objections

18          Defendants object to and move to strike plaintiff's evidence regarding his medical

19  condition.  Specifically, they object to exhibits consisting of unauthenticated copies of plaintiff's

20  medical records (ECF No. 62 at 86-8, 62-1 at 57-70).  Plaintiff cites these exhibits in support of

21  his assertions that the deprivation of outdoor exercise had the following effects:

22          o   his hypertension was exacerbated requiring additional medication;

23          o   he developed heartburn;

24          o   he suffered a more severe mental disorder resulting in a suicide attempt;

25  _____

26  [10] Correctional Clinical Case Management Services program.  There are four levels of care in the
    CDCR Mental Health Delivery System (MHDS): 1) CCCMS; 2) Enhanced Outpatient Program

27  (EOP); 3) Mental Health Crisis Bed Placement; and 4) DMH Inpatient Hospital Care.  Coleman
    v. Schwarzenegger, 922 F. Supp. 2d 882, 903 (E.D. Cal. 2009).

28  [11] RVR FD-09-07-011 shows a correction to indicate plaintiff did participate in the MHDS.

1          o  he needs anti-psychotic medication in order to function normally.

2          Evidence which could be made admissible at trial may be considered on summary

3  judgment.  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), cert. denied, 541 U.S. 937

4  (2004).  At the summary judgment stage, the court focuses not on the admissibility of evidence's

5  form but on the admissibility of its contents.  Block v. City of Los Angeles, 253 F.3d 410, 418-19

6  (9th Cir. 2001).  Although the medical records are unauthenticated, their contents are admissible.

7  The documents themselves could be made admissible at trial by authentication, or their contents

8  could be admitted through witness testimony.  Accordingly, the records are properly considered

9  on summary judgment.  See Fraser, 342 F.3d at 1036-37 (ruling that diary's contents may be

10  considered on summary judgment although diary inadmissible at trial).

11          Defendants also object to plaintiff's declaration in support of his cross-motion (ECF No.

12  62 at 78-79), in which plaintiff states that he was denied all outdoor exercise from June 7, 2009 to

13  April 23, 2009; that he was confined to his cell for thirty consecutive days from July 12, 2009

14  through August 12, 2009 because of the overlap of his loss of yard combined with a 30-day loss

15  of dayroom access; and that he developed medical problems (physical and mental) as a result of

16  the long term deprivation of outdoor exercise.  Defendants are correct that plaintiff is not a

17  medical professional qualified to offer expert medical testimony, but his declaration is not offered

18  as expert opinion testimony.  The declaration meets the standard of Rule 56(e), which requires

19  that affidavits "be made on personal knowledge, shall set forth such facts as would be admissible

20  in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

21  stated therein."  Plaintiff is competent to testify to his subjective experiences related to the loss of

22  outdoor exercise, which will not be confused by the court or any future fact-finder with expert

23  opinion regarding causation.  Furthermore, to the extent that defendants are really contesting

24  plaintiff's credibility or the accuracy of the facts in his declaration, the motion to strike highlights

25  the existence of triable factual disputes.

26          The motion to strike will be denied.

27  ////

28  ////

19

1    IV.    Discussion

2           A.   Legal Principles Governing Eighth Amendment Claim

3           "The Eighth Amendment's prohibition against cruel and unusual punishment imposes

4    duties on prison officials to 'provide humane conditions of confinement.'"   Foster v. Runnels, 554

5    F.3d 807, 812 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  "[T]he

6    deprivation of a single, identifiable human need such as food, warmth, or exercise" may

7    constitute an Eighth Amendment violation.  Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Exercise

8    is one of the most basic human necessities protected by the Eighth Amendment.  Keenan v. Hall,

9    83 F.3d 1083, 1091 (9th Cir. 1996); LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th Cir. 1993).

10          A claim that prison officials have deprived an inmate of humane conditions must meet

11   two requirements, one objective and one subjective.  Lopez v. Smith, 203 F.3d 1122, 1132 (9th

12   Cir. 2000) (en banc) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1995)).  To meet the

13   objective requirement, a "prison official's act or omission must result in the denial of 'the

14   minimal civilized measure of life's necessities.'"  Farmer, 511 U.S. at 834 (quoting Rhodes v.

15   Chapman, 452 U.S. 337, 347 (1981)).  Although a temporary denial of outdoor exercise will not

16   be considered an objectively substantial deprivation unless accompanied by adverse medical

17   effects, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997), the

18   extended denial of outdoor exercise constitutes a substantial deprivation even without such

19   effects.  Lopez, 203 F.3d at 1133 & n. 15.  A deprivation of six weeks or is "long term" and

20   satisfies the objective requirement without a showing of adverse medical effects.  Id.

21          The subjective component relates to the state of mind of the defendant, and requires

22   deliberate indifference.  Foster, 554 F. 3d at 812 (inmate must "make a subjective showing that

23   the deprivation occurred with deliberate indifference to the inmate's health or safety").  "To

24   establish a prison official's deliberate indifference, an inmate must show that the official was

25   aware of a risk to the inmate's health or safety and that the official deliberately disregarded the

26   risk."  Id. at 814 (citing Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir.2000)).  "'[T]he official

27   must both be aware of facts from which the inference could be drawn that a substantial risk of

28   serious harm exists, and he must also draw the inference.'"  Richardson v. Runnels, 594 F.3d 666,

20

1   672 (9th Cir. 2010) (quoting <u>Farmer</u>, 511 U.S. at 837).  Subjective knowledge of a risk may be

2   inferred from the obviousness of the risk.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir.

3   2010) (citing <u>Farmer</u>, 511 U.S. at 842).

4                    B.  <u>Objective Component: Seriousness of Deprivation</u>

5           The parties dispute the precise period of time that plaintiff went without outdoor exercise.

6   Plaintiff's declaration avers that he was completely deprived of yard from June 7, 2009 through

7   April 23, 2010, a period of ten and a half months.  As previously noted, the documentation of the

8   relevant disciplinary proceedings indicates that plaintiff was assessed overlapping periods of yard

9   loss that spanned the period of June 7, 2009 through November 28, 2009 (approximately five and

10  a half months) and again from January 12, 2010 through April 23, 2010 (almost three and a half

11  months).  Defendants rely on these assessments of sanctions for their chronology, but do not

12  provide any evidence of plaintiff's actual access to yard following the imposition of sanctions.

13  Accordingly, plaintiff's declaration is the only evidence before the court on the question whether

14  he was permitted yard access between November 28, 1009 and January 12, 2009, as he should

15  have been according to the disciplinary records.  To the extent there is a factual dispute related to

16  the actual duration of the deprivation, it does not affect disposition of the summary judgment

17  motions.  Whether plaintiff was deprived of yard for an unbroken ten and half month period, or

18  for discrete five and a half month and three and a half month periods separated by approximately

19  six weeks of access, the objective component is satisfied as a matter of law.

20          The Ninth Circuit has found objectively serious deprivations of human necessities where

21  prisoners were deprived of outdoor exercise for periods of as little as six weeks.  <u>Allen v. Sakai</u>,

22  48 F.3d 1082, 1086-88 (9th Cir.1995) (six weeks of confinement with only 45 minutes of exercise

23  per week objectively serious); <u>Lopez</u>, 203 F.3d at 1132-1133 (six and a half weeks with no access

24  to outdoor exercise objectively serious); <u>see also</u> <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151 (9th

25  Cir. 2010) (recognizing that under circuit law, deprivations of more than six weeks are

26  objectively serious).  In <u>Lopez</u>, the en banc court reversed a panel decision that had found a six

27  and a half week denial of yard not to be objectively serious.  <u>Lopez</u>, 203 F.3d at 1133 n.15.  In

28  light of <u>Lopez</u>, there is no question that plaintiff's evidence satisfies the objective component of

21

1   his Eighth Amendment claim.[12]  Plaintiff is entitled to judgment as a matter of law on the

2   objective component of his claim.

3               C.  Subjective Component: Deliberate Indifference

4           The deliberate indifference analysis involves a two-part inquiry into the culpability of the

5   defendants' state of mind.  The first question is whether defendants were subjectively aware of

6   the risk to plaintiff's health and safety, and the second is whether there was a reasonable

7   justification for the deprivation.  Thomas, 611 F.3d at 1150-51.  Defendants' motion for summary

8   judgment focuses on the first of these questions.

9           Defendants seek summary judgment on grounds that none of them was aware of the

10  cumulation of plaintiff's multiple assessments of lost yard time. The declarations of defendants

11  Statti, Wright, Kraft and Davey each state that when reviewing plaintiff's appeals of individual

12  disciplinary sanctions they were unaware of plaintiff's other disciplinary proceedings and his

13  other losses of yard privileges.  The defendants emphasize the volume of inmate appeals that they

14  handle, and their lack of familiarity with plaintiff and his disciplinary history.  ECF No. 53-11

15  (Wright Dec.), No. 53-12 (Kraft Dec.), No. 53-13 (Davey Dec.); No. 53-14 (Statti Dec.).

16  Defendant Statti, the appeals coordinator, states that he personally interviewed plaintiff regarding

17  his grievances and that plaintiff never complained about the combined effect of multiple losses of

18  yard.  ECF No. No. 53-14 (Statti Dec.) at ¶¶ 5-7.

19          Where a risk is obvious, subjective knowledge may be inferred.  Farmer, 511 U.S. at 842.

20  As noted above in discussion of administrative exhaustion, petitioner explicitly complained in

21  several of his appeals that he was being subjected to overlapping and/or repeated punishment for

22  the same offense.  The appeals were filed in relatively close succession, and overlapped

23  chronologically as they proceeded through the levels of review.  Moreover, each of plaintiff's

24  _____

25  [12] Defendants cite LeMaire v. Maass, supra, for the proposition that a four year deprivation of
    outdoor exercise does not violate the Eighth Amendment where an inmate presents a risk to

26  others.  LeMaire did not turn on the question whether the deprivation by its duration was
    objectively serious enough to implicate the Eighth Amendment, but on the distinct question

27  whether the deprivation was reasonable in light of the circumstances.  LeMaire, 12 F.3d at 1458.
    That inquiry goes to the subjective component of the claim, regarding the defendants' state of

28  mind.  Id.; see also Thomas, 611 F.3d at 1150, 1151.

1  individual yard forfeitures met or exceeded the 6-week standard the Ninth Circuit has recognized

2  for an objectively serious deprivation of outdoor exercise that implicates the Eighth Amendment.

3  Each individual appeal, therefore, presented the possibility of a constitutional violation.

4  Moreover, each of the defendants was in a position to obtain information about plaintiff's overall

5  disciplinary situation, and it strains credulity that any of them could have discharged their

6  administrative duties consistently with their constitutional obligations without doing so.[13]  To the

7  extent that onerous workloads prevented the defendants from drawing connections that should

8  have been drawn, that does not excuse their failure to recognize the obvious.  For these reasons,

9  the court finds that the defendants' general assertions of lack of knowledge do not support

10  summary judgment.

11       Each defendant also asserts more specifically that his or her individual lack of knowledge

12  is established by the chronology of his or her involvement in plaintiff's appeals.  The court now

13  addressed these arguments.

14       Defendant Wright

15       Defendant Wright ruled on three of the appeals at issue.  He contends that his lack of

16  deliberate indifference is established by the fact that each time an appeal reached him, the loss of

17  privileges at issue had expired or nearly expired.  As an example, he notes that he denied

18  plaintiff's appeal of the first disciplinary report (RVR FD-09-05-15) on August 26, 2009 and the

19  yard loss was set to expire on September 5, 2009.  The relevant date, however, is not the date of

20  Wright's decision but the date on which he received the appeal.  Wright received the appeal of the

21  first period of yard loss on July 15, 2009, halfway into the 90 day term.  ECF No. 53-5 at 4, 5.

22  Similarly, on September 21, 2009 he received plaintiff's appeal of the yard loss from July 31,

23  2009 through November 28, 2009.  ECF No. 53-7 at 4, 5.  This appeal specifically alleged the

24  "stacking" of disciplinary charges, id. at 4, and the underlying Rules Violation Report also

25  indicated it was a repeat offense, id. at 16.  Accordingly, Wright was alerted to the ongoing

26

---

27  [13] It is disturbing that the defendants consistently report reviewing appeals from disciplinary
    hearings without any information about an inmate's disciplinary history or present disciplinary
28  status.

1    deprivation of yard during its pendency.  Wright also points to his failure to realize in

2    adjudicating appeal Log. No. HDSP 09-01811 that plaintiff had sustained the 90-day loss of yard

3    that was the subject of the appeal.[14]  See ECF No. 53-7 at 2-3.  Rather than supporting an

4    inference of a non-culpable state of mind, however, this error supports an inference that Wright

5    failed to review the documents before him.  Whether this failure was the result of mere

6    negligence or deliberate indifference is a question of fact for the jury.  Because Wright's assertion

7    that he was unaware of the extent of yard loss is inconsistent with reasonable inferences from the

8    record of plaintiff's disciplinary proceedings, Wright is not entitled to summary judgment on this

9    ground.

10         Defendant Kraft

11         Defendant Kraft ruled on two of the appeals at issue.  She contends that she did not act on

12   any of these appeals until the assessed periods of yard loss had expired, and therefore cannot have

13   been deliberately indifferent.  Both appeals, however, were assigned to her during the pendency

14   of the yard loss at issue.  The appeal of yard loss from September 23 through November 7, 2009

15   was received on October 27, 2009 and specifically alleged stacking.  ECF No. 53-8 at 5-7.  The

16   appeal of yard loss from January 12 through April 3, 2010 was received on February 17 and

17   assigned on February 22.  ECF No. 53-9 at 5-6.  The underlying RVR specified that the

18   disciplinary infraction involved continuing misconduct.  Id. at 8.  Accordingly, Kraft was alerted

19   to an ongoing deprivation of yard during its pendency.  Because her assertion that she was

20   unaware of the deprivation is inconsistent with inferences in plaintiff's favor from the disciplinary

21   record, Karft is not entitled to summary judgment on this ground.

22         Defendant Davey

23         Defendant Davey audited the two appeals of yard loss that plaintiff sustained in early

24   2010.  He argues that he cannot have been deliberately indifferent because by the time he audited

25   the first of the 2010 appeals plaintiff "should have" had a period of restored access to the yard

26   between November 28, 2009 and January 12, 2010.  As previously discussed, there is no evidence

27

28   [14] Defendant acknowledges that this error was "not laudatory."  ECF No. 53-1 at 13.

1    before the court that plaintiff actually had access to the yard during that time; he declares that he

2    did not.  Moreover, Davey's first audit involved a 90-day loss of yard which he reviewed a month

3    into its duration.  See ECF No. 53-9 at 16.  His second audit of plaintiff's yard loss occurred

4    approximately 6 weeks later.  ECF No. 53-10 at 9.  Accordingly, the record supports an inference

5    in plaintiff's favor that Davey was aware of a substantial deprivation of yard loss during its

6    pendency.  Davey therefore is not entitled to summary judgment on this ground.

7           Defendant Statti

8           Defendant Statti reviewed each of the six appeals at issue.  His denial of awareness of the

9    deprivation is therefore subject to dispute.  The appeals of the various yard losses were received

10   by Statti during the pendency of each discrete deprivation, and each assessment of yard loss

11   overlapped with at least one other.  See ECF Nos. 53-5 at 4-5, 53-6 at 4-5, 53-7 at 4-5, 53-8 at 5-

12   6, 53-9 at 5-6, 53-10 at 5-6.  As noted above, several of these appeals and/or their supporting

13   documentation indicated that there was an ongoing pattern of disciplinary violations and resulting

14   sanctions.  Accordingly, the record supports an inference that Statti was aware of an ongoing and

15   substantial deprivation of outdoor exercise.  This conclusion is not defeated by Statti's declaration

16   that plaintiff did not explicitly complain during interviews about the increasing total period of

17   yard loss.  Because the appeals documentation alerted Statti to the continuing deprivation, his

18   denial of knowledge presents a credibility issue that must be decided by a jury.

19          In sum, there exists a triable issue of fact as to each defendant's subjective awareness of

20   the deprivation.  Because assessments of credibility and disputes of facts are for the jury, neither

21   party is entitled to summary judgment on this ground.  See Dominguez-Curry v. Nevada Transp.

22   Dept., 424 F.3d 1027, 1036 (9th Cir.  2005) (it is axiomatic that disputes about material facts and

23   credibility determinations must be resolved at trial, not on summary judgment).

24          Defendants make no affirmative argument regarding the reasonableness of the deprivation

25   in light of the circumstances, which is the second aspect of deliberate indifference in this context.

26   See Thomas, 611 F.3d at 1150-51.  As previously noted, plaintiff has alleged that the deprivation

27   of outdoor exercise was not justified by security concerns.  Because defendants address the

28   authorities related to this issue only in the context of qualified immunity, the court now turns to

1    that issue.

2              D.  Qualified Immunity

3         Defendants seek summary judgment on grounds of qualified immunity.  In resolving a

4    claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken

5    in the light most favorable to plaintiff, demonstrate that the officers' actions violated a

6    constitutional right, and (2) whether a reasonable officer could have believed that his conduct was

7    lawful, in light of clearly established law and the information the officer possessed.  Anderson v.

8    Creighton, 483 U.S. 635 (1987).   These questions may be addressed in the order that makes the

9    most sense given the circumstances of the case.  Pearson v. Callahan, 555 U.S. 223 (2009).

10   Where the answers to these questions turn on disputed material facts, which must be decided by a

11   jury, qualified immunity is inappropriate.  See Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th

12   Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of

13   disputed issues of fact in their favor, and against the non-moving party, summary judgment is not

14   appropriate."), cert. denied, 543 U.S. 811 (2004).

15        The first question has already been answered.  The court has concluded above that the

16   facts, taken in the light most favorable to plaintiff, establish a constitutional violation.  Because

17   there is a triable issue of material fact regarding deliberate indifference, summary judgment on

18   qualified immunity grounds is not appropriate.  See Wilkins, 350 F.3d at 956.

19        Defendants focus on the second question.  They argue that even if they had been aware of

20   the extent of plaintiff's yard deprivation, they would be entitled to qualified immunity because a

21   reasonable official would have believed it was lawful to curtail outdoor exercise as a sanction for

22   inmate misconduct.  Defendants rely for this proposition on LeMaire v. Maass, 12 F.3d at 1457-

23   58, in which the Ninth Circuit held that there was no deliberate indifference where an inmate's

24   continual violation of prison rules caused consecutive losses of outdoor exercise totaling five

25   years.  Defendants contend that plaintiff, like the inmate in LeMaire, was "the master of his own

26   fate" in that he could regain yard access by discontinuing his misbehavior.  See LeMaire, 12 F.3d

27   at 1458.

28        LeMaire does not govern the claim presented in this case.  The inmate plaintiff in LeMaire

1    had attacked two correctional officers with a weapon as he left the yard, and vowed to attack

2    them again.[15]  He lost his exercise privileges based on a specific determination that he posed a

3    grave security risk outside his cell.  Id.  LeMaire stands for the proposition that limitations on

4    outdoor exercise may be justified by the need to protect others from a present risk of harm; it does

5    not stand for the proposition that non-violent disciplinary infractions will justify the long term

6    deprivation of outdoor exercise.

7         The Ninth Circuit has expressly held that LeMaire does not apply where there is no threat

8    of violence and no specific finding of a security risk.  For example, in Thomas v. Ponder the court

9    reversed summary judgment for defendants where an inmate had been held in a security housing

10   unit for over 13 months without outdoor exercise because he refused to sign a non-violence

11   pledge.  The inmate had a past history of assaultive behavior but his only infraction during the 13

12   month period was "willfully obstructing a police officer."  Thomas, 611 F.3d at 1153.  The court

13   distinguished LeMaire on the basis of the inmates' materially different disciplinary histories and

14   security concerns.  Id. at 1153-54.

15        In Allen v. Sakai, the Ninth Circuit held that qualified immunity was unavailable where

16   the plaintiff had been confined in SHU for six weeks with only 45 minutes per week of outdoor

17   exercise.  The plaintiff was transferred to the SHU because of disciplinary offenses including

18   assault.  Allen, 48 F.3d at 1086.  The Allen court distinguished LeMaire because even though the

19   inmate was in SHU due to disciplinary infractions, he was not denied yard on the basis of a

20   finding that he posed a grave security risk outside his cell.  Id. at 1087-88.

21        If the holding of LeMaire does not extend to the facts of Thomas and Allen, it cannot

22   apply to the facts of the present case.  Moreover, if LeMaire did not support qualified immunity in

23   Allen, it cannot support qualified immunity here.  In light of clearly established Ninth Circuit

24   authority, "defendants cannot legitimately claim that their duty to provide regular outdoor

25   exercise to [plaintiff] was not clearly established."   Allen, 48 F.3d at 1087-88.  Neither can they

26

27   [15] The inmate had also attacked another prison guard in a separate incident, "savagely attacked"
     another inmate, assaulted numerous prison officers with hot water, toilet water, food, feces, and
28   urine, and had at least 25 major rule violations in a two year period.  Id. at 1048, 1058.

1   claim, in light of <u>Allen</u>, that it was reasonable to believe that that duty was suspended because

2   plaintiff had committed nonviolent disciplinary infractions.  Accordingly, defendants' motion for

3   summary judgment on grounds of qualified immunity should be denied.

4        Accordingly, IT IS ORDERED that:

5        1.  Plaintiff's motion for a protective order (ECF No. 58) is denied as moot; to the extent it

6   has not been rendered moot, it is denied as overbroad and unwarranted.

7        2.  Defendants' evidentiary objections and motion to strike (ECF No. 69) are denied.

8        IT IS HEREBY RECOMMENDED that:

9        1.  Defendants' motion to dismiss for failure to exhaust administrative remedies (ECF No.

10  53) be denied;

11       2.  Defendants' motion for summary judgment (ECF No. 53) be denied;

12       3.  Plaintiff's cross-motion for summary judgment (ECF No. 62) be granted in part, in the

13  form of an order pursuant to Fed. R. Civ. P. 56(g) that the objective component of his Eight

14  Amendment claim (the seriousness of the deprivation) is not genuinely in dispute and shall be

15  treated as established in plaintiff's favor;

16       4.  Plaintiff's cross-motion for summary judgment (ECF No. 62) be denied in all other

17  respects; and

18       5.  This matter proceed to trial against defendants Wright, Kraft, Davey and Statti on

19  plaintiff's Eighth Amendment claims.

20       These findings and recommendations are submitted to the United States District Judge

21  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

22  after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

25  objections shall be served and filed within fourteen days after service of the objections.  The

26  ////

27  ////

28  ////

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: September 20, 2013

4

5                                                ALLISON CLAIRE

6                                                UNITED STATES MAGISTRATE JUDGE

7

8

9    AC:009
     fost0929.msj+

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28